IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NESTOR DANIEL AVILA-MIRANDA,   )
                               )
            Plaintiff,         )
                               )
     v.                        )      1:18CV120
                               )
ETHAN CALEB REYNOLDS,          )
GREGORY DWAYNE JACKSON, and    )
LASALLE CORRECTION TRANSPORT,  )
LLC,                           )
                               )
            Defendants.        )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Defendant Gregory Dwayne Jackson ("Jackson") has moved to dismiss, (Doc. 9), Plaintiff's First Amended Complaint ("First Am. Compl."), (Doc. 4), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Because Jackson moves to dismiss on jurisdictional grounds, (see Doc. 9), he has filed an affidavit in support of his motion, (Doc. 9-1). Defendant Ethan Caleb Reynolds ("Reynolds") and Defendant LaSalle Correction Transport, LLC ("LaSalle") have filed answers

to the First Amended Complaint. (Def. Reynolds (Doc. 3); Def. LaSalle (Doc. 5).)[1]

Plaintiff has filed a response in opposition to Jackson's motion to dismiss, (Doc. 15), contemporaneously filing a motion to amend his First Amended Complaint to add more detailed allegations and to set forth an additional claim for relief under Bivens. (Doc. 13; see Doc. 15 at 2.) Jackson has replied in support of his motion to dismiss. (Doc. 16.) And both Jackson and LaSalle have responded in opposition to Plaintiff's motion to amend. (Doc. 17.)

By way of objection to Plaintiff's motion to amend, Defendants Jackson and LaSalle argue that the proposed Second Amended Complaint ("Second Am. Compl."), (Doc. 13-1), fails to establish a plausible claim of street racing and that Jackson is entitled to absolute immunity, derivative sovereign immunity, public official immunity, and qualified immunity, (e.g., Doc. 17 at 3, 9).

This court finds that Plaintiff's motion to amend, (Doc. 13), should be allowed. This court does not find the proposed

---

[1] Because Jackson removed this case from state court, (see Doc. 1), the early docket entry numbers are out of order. Defendant Reynolds's Answer was filed on or around November 29, 2017, (see Doc. 3 at 1), in response to Plaintiff's First Amended Complaint, which was filed on or around October 17, 2017, (see Doc. 4 at 1).

amendments futile or any undue prejudice. The court, therefore, will deny Jackson's motion to dismiss, (Doc. 9), as moot.

## I.  __PROCEDURAL HISTORY AND FACTUAL BACKGROUND__

Plaintiff filed his original complaint in state court against Reynolds. (See Doc. 2). He then filed the First Amended Complaint in state court, adding Jackson and LaSalle as defendants. (See First Am. Compl. (Doc. 4).) Jackson removed the matter to this court based upon diversity of citizenship under 28 U.S.C. § 1332(a). (Doc. 1 at 2.) Defendant Reynolds and Defendant LaSalle filed answers to the First Amended Complaint (Doc. 4). (Docs. 3, 5, respectively; see supra at 2 n.1.)

Jackson moved to dismiss the First Amended Complaint to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), (Doc. 9), and filed a supporting affidavit, (Affidavit of Gregory Dwayne Jackson ("Jackson Aff.") (Doc. 9-1)). Plaintiff responded, (Pl.'s Resp. to Mot. to Dismiss ("Pl.'s Resp.") (Doc. 15)), and filed a supporting affidavit, in which he verified the allegations contained in the proposed Second Amended Complaint, (Affidavit of Nestor Daniel Avila-Miranda ("Miranda Aff.") (Doc. 15-1) at 1). Contemporaneously, Plaintiff separately moved to amend the First Amended Complaint. (Doc. 13.)

Plaintiff alleges in the First Amended Complaint that he was injured in an automobile accident on August 15, 2016, involving a prisoner transport van that was owned by LaSalle, driven by Jackson, and in which Plaintiff was a shackled passenger. (E.g., First Am. Compl. (Doc. 4) ¶¶ 10, 19.) Plaintiff alleges that he had been detained by the United States' Citizenship and Immigration Services ("USCIS") and, at the time of the accident, was in the process of being transported from North Carolina to Stewart Detention Center in Georgia. (Id. ¶¶ 9-10.) Plaintiff contends that Jackson and the driver of another automobile, Reynolds, became involved in a speed competition. (Id. ¶ 14.)[2] An accident between the two automobiles resulted, and Plaintiff was seriously injured. (Id. ¶¶ 17, 19.) In the First Amended Complaint, Plaintiff asserts claims of negligence, gross negligence, and punitive damages as to each of Reynolds, (id. ¶¶ 29-39, 52-57), and Jackson. (Id. ¶¶ 40-51, 58-63.) Plaintiff alleges LaSalle is vicariously liable for the actions of Jackson. (Id. ¶ 12.)

---

[2] Based on Jackson's affidavit, (Jackson Aff. (Doc. 9-1)), and Plaintiff's verification of the allegations contained in the proposed Second Amended Complaint, (Miranda Aff. (Doc. 15-1) at 1), it is clear that the parties dispute the pertinent facts of the accident and who may have been at fault. Those facts and that factual dispute will be further addressed as necessary herein.

Jackson states that, "[a]t all times immediately before, during, and after the attack and accident, [Jackson] was acting under the authority, control, and supervision of [the United States Immigration and Customs Enforcement ("ICE")] to transport, secure, and protect the six ICE detainees being transported in the van." (Jackson Aff. (Doc. 9-1) ¶ 19.) Jackson argues that he was "operating as an agent of ICE when the accident occurred, and he is therefore entitled to immunity from suit." (Def. Jackson's Mem. of Law in Supp. of Mot. to Dismiss ("Jackson's Br.") (Doc. 10) at 6.)

Plaintiff's proposed Second Amended Complaint contains additional allegations further describing the encounter between Jackson and Reynolds and the accident between the vehicles. (See, e.g., Second Am. Compl. (Doc. 13-1) ¶¶ 20-28.) The proposed Second Amended Complaint restates the causes of action from the First Amended Complaint, though the Second Amended Complaint does not allege punitive damages as freestanding causes of action, and adds a cause of action pursuant to 42 U.S.C. § 1983. (Id. ¶¶ 84-94.) Jackson and LaSalle filed a response in opposition to the motion to amend. (Defs.' Opp'n to

Pl.'s Mot. to File Second Amended Complaint ("Defs.' Resp."
(Doc. 17).)[3]

Additional facts will be addressed as necessary in the
analysis.

## II. **ANALYSIS**

Federal Rule of Civil Procedure 15(a)(1) allows a party to
amend its pleading once as a matter of course under certain
circumstances not applicable here. Otherwise, "a party may amend
its pleading only with the opposing party's written consent or
the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should
freely give leave when justice so requires[,]" id., denying
leave "only when the amendment would be prejudicial to the
opposing party, there has been bad faith on the part of the
moving party, or the amendment would have been futile." Laber v.
Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (citation and internal
quotation marks omitted). Defendants argue that the motion to
amend should be denied on grounds of futility and prejudice.
(Defs.' Resp. (Doc. 17) at 2.)

With respect to futility, leave to amend "should only be
denied . . . when the proposed amendment is clearly insufficient
or frivolous on its face." Johnson v. Oroweat Foods Co., 785

---

[3] Hereinafter, "Defendants" will refer to Jackson and
LaSalle together.

F.2d 503, 510 (4th Cir. 1986) (citations omitted). "An amendment would be futile if the amended claim would fail to survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)." Syngenta Crop Prot., Inc. v. E.P.A., 222 F.R.D. 271, 278 (M.D.N.C. 2004) (citation omitted). A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. See Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).

### A. **Futility**

Defendants argue that the proposed Second Amended Complaint is futile because: (i) it fails to state a plausible claim against them for a violation of N.C. Gen. Stat. § 20-141.3, (ii) it fails to state a plausible claim that Jackson was deliberately indifferent to Plaintiff's safety, and (iii) Jackson is entitled to immunity. (See Defs.' Resp. (Doc. 17) at 3-10.)

### 1. **Speed Competition, N.C. Gen. Stat. § 20-141.3**

This court first observes that Defendants grossly misstate the Second Amended Complaint in arguing that "[e]very cause of action . . . is based upon the conclusory allegations that Defendant Jackson was negligent, reckless, willful and wanton, or deliberately indifferent because he was engaged in a 'speed competition.'" (Defs.' Resp. (Doc. 17) at 3 (emphasis added).)

In fact, Plaintiff's claims are based on substantially more than merely a speed competition.[4] Plaintiff alleges, inter alia, that Jackson operated a vehicle carelessly and heedlessly in violation of N.C. Gen. Stat. § 20-140(a), without due caution and circumspection in violation of N.C. Gen. Stat. § 20-140, by failing to decrease speed in violation of N.C. Gen. Stat. § 20-141, and further that Jackson acted in reckless disregard of the rights and safety of others. (Second Am. Compl. (Doc. 13-1) ¶¶ 61, 68.) The Second Amended Complaint provides a number of allegations to support the negligence and gross negligence claims, regardless of whether Jackson and Reynolds engaged in a speed competition in violation of N.C. Gen. Stat. § 20-141.3. For this reason alone, this court finds Defendants' futility arguments should be denied.

Defendants' remaining futility arguments are no more persuasive. First, the fact that law enforcement never charged Jackson with a violation of N.C. Gen. Stat. § 20-141.3, (see Defs.' Resp. (Doc. 17) at 4-5), is not dispositive. Defendants' argument that the absence of a criminal charge by law

---

[4] Although Defendants reference the issue of joint and several liability as to Jackson and Reynolds, (see, e.g., Defs.' Resp. (Doc. 17) at 6), Defendants do not argue here the issue of joint and several liability generally, or in the absence of an allegation of speed competition, and the court will not address it.

enforcement renders Plaintiff's allegations "not plausible,"
(id. at 5), is unfounded. Defendants offer no authority for such
an argument, and this court is not aware of any necessity that
law enforcement issue a criminal charge as a requirement
precedent to establishing plausible allegations arising from an
automobile accident.[5] At this stage of the proceedings, the court
views the fact that law enforcement did not charge Jackson as
irrelevant.

Defendants state that N.C. Gen. Stat. § 20-141.3 provides a
cause of action where two or more vehicles engage in a street
race on a public highway but contend that the proposed
allegations are insufficient to establish such a cause of
action. (Defs.' Br. (Doc. 17) at 5.) The statute provides:

> (a) It shall be unlawful for any person to operate a
> motor vehicle on a street or highway willfully in
> prearranged speed competition with another motor
> vehicle. Any person violating the provisions of this
> subsection shall be guilty of a Class 1 misdemeanor.

---

[5] Defendants argue that "[o]ne of the factors that is
weighed by North Carolina courts in determining civil liability
under the statute is that the defendant either admitted to
racing, pled guilty to a violation of the statute, or was
charged." (Defs.' Resp. (Doc. 17) at 4.) The fact that the
Supreme Court of North Carolina recognized a guilty plea as a
factor in the case cited by Defendants, Harrington v. Collins,
298 N.C. 535, 541, 259 S.E.2d 275, 279 (1979), is neither
surprising, nor compelling, nor persuasive to their argument at
this juncture. The Supreme Court was discussing the import of
the guilty plea in determining whether the trial court had
committed error in granting the defendant's motion for directed
verdict. Id. at 541.

(b) It shall be unlawful for any person to operate a
motor vehicle on a street or highway willfully in
speed competition with another motor vehicle. Any
person willfully violating the provisions of this
subsection shall be guilty of a Class 2 misdemeanor.

N.C. Gen. Stat. § 20-141.3. This statute makes unlawful racing a

crime and distinguishes the two criminal violations depending

upon whether the speed competition was prearranged or merely

willful.

Defendants argue persuasively that the speeds and driving

circumstances in the state cases they cite involving speed

competition are different from those specifically alleged in

this case. (See Defs.' Resp. (Doc. 17) at 5-6.) The Second

Amended Complaint alleges that Jackson and Reynolds were driving

at speeds between 60 and 70 miles per hour at various times on

Interstate 40, (see Second Am. Compl. (Doc. 13-1) ¶¶ 18-19),

which might be inferred to be within the speed limit on an

interstate. However, the Second Amended Complaint also alleges

in several instances that Jackson and Reynolds sped up, (see id.

¶¶ 22-24), and that, at one point, "Jackson again quickly sped

up in the center lane, and once again passed the Reynolds

vehicle, squeezing through traffic . . . ." (Id. ¶ 23.)

This court does not read the allegations in the Second

Amended Complaint to limit the speeds at which the interaction

between Jackson and Reynolds took place to those in compliance with state law. This court is not persuaded by Defendants' arguments with respect to the alleged violation of N.C. Gen. Stat. § 20-141.3. The court is unable to conclude that Plaintiff has failed to plausibly state a claim as a matter of law as to that specific violation. To the contrary, this court finds that the Second Amended Complaint permits a reasonable inference that Jackson's speed may well have been in excess of the posted speed limit during the interaction with Reynolds. This court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court finds that the allegations contained in the Second Amended Complaint related to a speed competition are not futile.

Second, Defendants' argument that the proposed Second Amended Complaint is futile as to a deliberate indifference claim under 42 U.S.C. § 1983 or Bivens is premised upon removing "the false and unsupported conclusion that Defendant Jackson was street racing in violation of N.C. Gen. Stat. § 20-141.3, [leaving] no basis for even a claim of negligence against [Jackson], let alone a Bivens claim . . . ." (Defs.' Resp. (Doc. 17) at 8.) This court already found that the allegations as to

N.C. Gen. Stat. § 20-141.3 were not futile. Therefore, this court does not find this argument persuasive.

Third, Defendants further argue that the "proposed pleading alleges that Defendant Jackson took evasive action to avoid an accident and was traveling within the speed limit . . . ." (Id. at 8-9.) In support, they point to Jackson's affidavit. (Id. at 9 (citing Jackson Aff. (Doc. 9-1)).) This argument addresses the credibility of the allegations in the Second Amended Complaint, and the court therefore declines to credit Jackson's affidavit on this issue. When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). And in assessing futility, "[l]eave to amend . . . should only be denied . . . when the proposed amendment is clearly insufficient or frivolous on its face." Oroweat Foods Co., 785 F.2d at 510. The proposed Second Amended Complaint is not frivolous on its face.

## 2. **Jackson's Immunity**

Defendants argue at length that the proposed Second Amended Complaint is futile because Jackson is entitled to applicable immunity defenses. (Defs.' Resp. (Doc. 17) at 9.) In support of this argument, Defendants incorporate Jackson's arguments previously made in his memorandum and reply in support of his

motion to dismiss. (Jackson's Br. (Doc. 10); Doc. 16.) This court disagrees, as a matter of law and fact, that Jackson has sufficiently established that he is entitled to dismissal on the grounds of immunity to require denying the motion to amend.

Jackson argues, inter alia, that federal employees enjoy absolute immunity from acts or omissions within the scope of their employment, citing 28 U.S.C. § 2679(b). (Jackson's Br. (Doc. 10) at 6-7.) However, in determining whether Jackson is such an employee, the relevant statutory starting point is 28 U.S.C. § 2671, which provides:

> 'Employee of the government' includes . . . officers
> or employees of any federal agency, members of the
> military or naval forces of the United States, members
> of the National Guard . . . and persons acting on
> behalf of a federal agency in an official capacity,
> temporarily or permanently in the service of the
> United States, whether with or without compensation.

That statute also provides that the term "'Federal agency' . . . does not include any contractor with the United States." Id. Therefore, the question is whether Jackson was acting on behalf of a federal agency in an official capacity or whether Jackson was a contractor and therefore excluded from the protection of 28 U.S.C. § 2679(b).

In his memorandum in support of his motion to dismiss, two of the cases Jackson cites in support of his argument that he is a federal employee are Lee v. United States, 171 F. Supp. 2d

566, 574 (M.D.N.C. 2001), and <u>Wallen v. Domm</u>, 700 F.2d 124, 126 (4th Cir. 1983). (<u>See</u> Jackson's Br. (Doc. 10) at 7.) Both cases appear to be cited for the unremarkable proposition that an employer would be liable for torts committed by an employee during the course of the employer's business, and employees of the United States are immune from suit except as provided by Federal law. The cases, therefore, do not support Jackson's argument that he is a federal employee as a matter of law.

In <u>Lee</u>, the United States submitted a certification pursuant to the Westfall Act that the defendant was acting within the scope of his office or employment, and one of the issues was a challenge to that certification. 171 F. Supp. 2d at 572-73. No such certification has been provided in this case. (<u>See</u> Pl.'s Resp. (Doc. 15) at 3.) In <u>Wallen</u>, the issue addressed by the Fourth Circuit was whether an assault committed by a federal employee fell outside the limits of a claim of absolute immunity. 700 F.2d at 126. Neither <u>Lee</u> nor <u>Wallen</u> supports Jackson's argument that he is a federal employee as a matter of law.

The Fourth Circuit recently addressed the question of whether an individual is a federal employee for purposes of the Westfall Act, explaining that:

The question of whether a defendant is a
government employee or an independent contractor under
the Act . . . is a question of federal law. Wood v.
Standard Prods. Co., 671 F.2d 825, 829 (4th Cir.
1982); see also Logue v. United States, 412 U.S. 521,
528 (1973). The test employed for distinguishing
between a contractor and an employee for FTCA purposes
was developed by the Supreme Court in Logue and United
States v. Orleans, 425 U.S. 807 (1976). Robb v. United
States, 80 F.3d 884, 887 (4th Cir. 1996). Although
there are a number of factors that can be considered,
the critical factor in making the determination is the
authority of the federal government to control the
detailed physical performance of the contractor.
Logue, 412 U.S. at 527-28; see also Orleans, 425 U.S.
at 814. Under these controlling authorities, a
contractor can be said to be an employee or agent of
the United States within the intendment of the Act
only where the Government has the power under the
contract to supervise a contractor's day-to-day
operations and to control the detailed physical
performance of the contractor. Wood, 671 F.2d at 829.
Notably, it is not necessary that the Government
continually control all aspects of the individual's
activities, so long as it has the authority to do so
given the nature of the task. Patterson & Wilder
Constr. Co. v. United States, 226 F.3d 1269, 1274
(11th Cir. 2000). Primarily, the distinction turns on
the absence of authority in the principal to control
the physical conduct of the contractor in performance
of the contract with the government. Robb, 80 F.3d at
888 (quoting Logue, 412 U.S. at 527) (emphasis added)
. . . . It is the right to control, rather than the
actual exercise of control, that is significant. ARA
Leisure Servs., Inc. v. N.L.R.B., 782 F.2d 456, 460
(4th Cir. 1986) (emphasis added).

U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC, 899

F.3d 236, 248-49 (4th Cir. 2018) (certain alterations,

citations, footnote, and internal quotation marks omitted).

Jackson's affidavit falls short of establishing, at this point in the proceedings, that he is a federal employee. "A critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" Orleans, 425 U.S. at 814 (quoting Logue, 412 U.S. at 528). In Orleans, the Supreme Court wrote:

> In Logue this Court held that employees of a county jail that housed federal prisoners pursuant to a contract with the Federal Bureau of Prisons were not federal employees or employees of a federal agency; thus, the United States was not liable for their torts. Although the contract required the county jail to comply with Bureau of Prisons' rules and regulations prescribing standards of treatment, and although the United States reserved rights of inspection to enter the jail to determine its compliance with the contract, the contract did not authorize the United States to physically supervise the jail's employees. In short it could take action to compel compliance with federal standards, but it did not supervise operations.

Orleans, 425 U.S. at 814-15.

Similarly, here, Jackson's affidavit does not persuade this court that he is a federal employee, at least sufficiently to permit this court to find that Plaintiff's proposed Second Amended Complaint is futile.

Jackson states that he is employed by and directly compensated by LaSalle. (Jackson Aff. (Doc. 9-1) ¶ 2.) Moving past LaSalle as his direct employer, Jackson offers several

conclusions regarding his supervision by ICE, including that he was at all times "acting under the authority, control, and supervision of ICE . . . ." (Id. ¶ 19.) However, he offers very few facts to support a conclusion that the United States supervised his operations sufficient to find that he is a federal employee. Jackson contends that he receives training regarding detention standards as promulgated by ICE, (id. ¶ 5), but neglects to explain whether LaSalle or some other entity provides that training and, more importantly, who might supervise and enforce those training standards other than his employer, LaSalle. Jackson also alleges the existence of ICE forms necessary to authorize transportation of detainees and their property, (id. ¶¶ 6, 8, 10), but Jackson does not actually explain or identify any ICE personnel who physically supervised him during the discharge of his transfer responsibilities. While he generally states that, "[d]uring the transportation assignment in question, [he] acted under the supervision and authority of ICE Agent Michael Kidd," (id. ¶ 11), he also states that he was merely provided with Agent Kidd's telephone numbers and "instructed and trained to contact him" with any issues, (id. ¶ 12). Those allegations fall short of establishing that ICE had sufficient authority to control Jackson's conduct during the transport of any detainees.

Notably, Jackson states that he was "given charge of six detainees," (id. ¶ 14), suggesting that he, not ICE, had charge of the prisoners and therefore the authority "to control the physical conduct of the contractor in performance of the contract with the government." Robb, 80 F.3d at 888. This court therefore finds that Jackson's arguments as to immunity do not establish, as a matter of law, the futility of Plaintiff's proposed Second Amended Complaint.

This court notes two additional matters in response to Defendants' argument that Jackson is entitled to some form of governmental immunity. First, the First Amended Complaint alleges that "LaSalle provided contract transportation services to the [USCIS] for the transportation of USCIS detainees within the United States . . . ." (First Am. Compl. (Doc. 4) ¶ 4.) In its answer, LaSalle admits this allegation. (LaSalle Answer (Doc. 5) ¶ 4.) Jackson is an employee of LaSalle, (Jackson Aff. (Doc. 9-1) ¶ 2), apparently is not a party to the contract between USCIS and LaSalle, and Jackson offers no fact to explain why he was at all times acting "under the authority, control, and supervision of ICE," (id. ¶ 19), as opposed to his employer, LaSalle. While the facts described above may not be sufficient to ultimately defeat Jackson's claim of federal employment, those facts – a contract between LaSalle and the United States

and Jackson's employment by LaSalle – do not suggest the type of
control of Jackson by the United States necessary to establish
his status as a federal employee.

Second, Jackson states in his affidavit that, "[o]n
August 15, 2016, I drove a Lasalle/Irwin County Detention van to
pick up transport [sic] the six detainees from the ICE facility
in Cary, North Carolina." (Id. ¶ 13.) It is not clear at all
what Jackson is referring to as a "Lasalle/Irwin County
Detention van." The First Amended Complaint alleges, and LaSalle
admits, that on August 15, 2016, Jackson was driving a van owned
by LaSalle. (First Am. Compl. (Doc. 4) ¶ 10; LaSalle Answer
(Doc. 5) ¶ 10.) Although this is a relatively small matter, the
resolution of which is not necessary to this motion, Jackson's
allegation obfuscates LaSalle's control of Jackson's employment,
and, relatedly, LaSalle's direct control of the actual method
and manner of transportation of detainees.

B. **Prejudice**

Defendants argue prejudice because they "would have to
expend significant time and resources to file new Motions to
Dismiss and supporting briefs to address the new claims based
upon the same lack of conclusory allegations." (Defs.' Resp.
(Doc. 17) at 2.) This court finds this argument somewhat
surprising, as only Jackson has filed a motion to dismiss.

LaSalle has not filed a motion to dismiss, choosing instead to file an answer. (LaSalle Answer (Doc. 5).) While LaSalle incorporated by reference any other affirmative defense raised by any other defendant, (id. at 12), that allegation is insufficient to raise a Rule 12 defense. (See LR7.3(a) ("All motions, unless made during a hearing or at trial, shall be in writing and shall be accompanied by a brief . . . . Each motion shall be set out in a separate pleading.").) Nevertheless, this court will assume both Jackson and LaSalle anticipate filing motions to dismiss the Second Amended Complaint if Plaintiff's motion is allowed.

This court does not find the proposed Second Amended Complaint causes any undue prejudice to Jackson or LaSalle. Nearly every case in which an amendment is permitted will likely result in additional time and costs for the parties, and "mere delay in moving to amend is 'not sufficient reason to deny leave to amend . . . .'" Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987) (quoting Oroweat Food Co., 785 F.2d at 509-10). Here, the amendment was prompted by Jackson's claim of immunity, a claim that might not have been readily anticipated by Plaintiff in conducting his original investigation. Plaintiff alleges that Jackson is employed by LaSalle, a limited liability company providing contract

transportation services to USCIS. (First Am. Compl. (Doc. 4) ¶ 4; see also LaSalle Answer (Doc. 5) ¶ 4.) Nothing in the pleadings suggests Plaintiff should have anticipated Jackson might claim to be a federal employee, and discovery has not started.

This court finds Defendants' complaints as to additional expenses and effort unavailing and that the proposed Second Amended Complaint does not unfairly prejudice Jackson or LaSalle.

## III. CONCLUSION

For the reasons explained herein, this court does not find Plaintiff's proposed Second Amended Complaint either futile or unfairly prejudicial. Because "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), this court finds that Plaintiff's motion to amend, (Doc. 13), should be granted.

"As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001) (citations and internal quotation marks omitted). Motions directed at a superseded pleading are to be denied as moot. See Colin v. Marconi Commerce Sys. Emps.' Ret. Plan, 335 F. Supp. 2d 590, 614 (M.D.N.C. 2004) (finding defendants' earlier motions to

dismiss and for summary judgment as to one count of the first amended complaint rendered moot by filing of plaintiff's second amended complaint); Turner v. Kight, 192 F. Supp. 2d 391, 397 (D. Md. 2002) (denying as moot motion to dismiss original complaint on grounds that amended complaint superseded original complaint). This court will therefore deny without prejudice Jackson's motion to dismiss, (Doc. 9), as moot.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint, (Doc. 13), is **GRANTED.** Within 7 days of the entry of this Memorandum Opinion and Order, Plaintiff shall file and serve the Second Amended Complaint in the form attached to his motion.

**IT IS FURTHER ORDERED** that Defendant Gregory Jackson's Motion to Dismiss, (Doc. 9), is hereby **DENIED WITHOUT PREJUDICE** as **MOOT.**

This the 12th day of March, 2019.

_____
United States District Judge